**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CARL E. W.,**

**Plaintiff,**

**v.**

**Civil Action 2:26-cv-399**
**Judge Douglas R. Cole**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Carl E. W. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 11), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability determination and **REMAND** this matter pursuant to Sentence 4 of § 405(g).

## I. BACKGROUND

Plaintiff protectively filed his DIB and SSI applications in 2023 and alleged that he became disabled beginning November 14, 2020. (R. at 245–65.) After Plaintiff's applications were denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a

telephonic hearing on April 8, 2025, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id.* at 56–83.) A vocational expert ("VE") also appeared and testified. On June 13, 2025, the ALJ issued an unfavorable determination, which became final on February 4, 2026, when the Appeals Council declined review. (R. at 7–33, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. He contends that the ALJ reversibly erred when evaluating prior administrative findings from state agency reviewing psychologists. (Pl.'s Statement of Errors 5–9, ECF No. 10.) The undersigned agrees.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on June 13, 2025. (R. at 7–33.) The ALJ initially determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. (*Id.* at 13.) At step one of the sequential evaluation process,[1] the

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

ALJ found that Plaintiff had not engaged in substantial gainful activity since his November 14, 2020 alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: unspecified mood disorder; anxiety; borderline personality disorder (BPD); attention deficit hyperactivity disorder (ADHD); unspecified trauma and stressor-related disorder; cervical syringomyelia; headaches; and labral tear of the left shoulder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, and scaffolds. The claimant can occasionally climb ramp and stairs, stoop, crouch, and crawl. He can occasionally reach overhead and frequently reach in all other directions with the nondominant left upper extremity (LUE). He should avoid hazards of high exposed places and moving mechanical parts. He can work in environments with up to moderate noise as defined in the Dictionary of Occupational Titles (DOT). The claimant should avoid interaction with the public but can have frequent interaction with coworkers and supervisors. The claimant should not perform tandem tasks. He can understand, remember, and carry out simple instructions. The claimant can perform work that does not require a specific production pace, such as assembly line jobs or jobs with hourly production quotas. He can deal with occasional changes in a routine work setting.

(*Id.* at 17.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 25.) The ALJ then relied on the VE's testimony at step five to determine that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

national economy that Plaintiff could perform including the representative jobs of routing clerk, mail clerk, and small part assembler. (*Id*. at 25–26.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 26.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own

regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error when evaluating prior administrative findings from state agency reviewers. (Pl.'s Statement of Errors 5–9, ECF No. 10.) The undersigned agrees, at least in part.

### A. The Evaluation of Medical and Other Types of Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

[3] Because Plaintiff's applications were filed in 2023, they are subject to regulations governing applications filed on or after March 27, 2017.

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

**B. The Prior Administrative Findings**

On July 22, 2024, Michael Cremerius, Ph.D. reviewed Plaintiff's file at the initial level. (R. at 90, 102.) Dr. Cremerius found, in relevant part, that Plaintiff had moderate limitations in his ability to interact with others. (*Id.* at 88, 92–93, 100, 104–05.) He further found that because of those limits, Plaintiff was "limited to brief and superficial contact with co-workers and supervisors," and "no contact with the public." (*Id.* at 93, 105.)

At the reconsideration level, Audrey Todd, Ph.D., reviewed Plaintiff's file on October 21, 2024. (*Id.* at 115, 126.) Dr. Todd agreed with Dr. Cremerius' social-interaction limits. (*Id.* at 118–19, 129–30.)

**C. The ALJ's Evaluation of the Reviewers' Findings**

The ALJ began by summarizing the reviewers' findings, writing as follows:

> [T]he undersigned notes that Michael Cremerius, Ph.D., the State agency psychological consultant, at the initial level of review, and Audrey Todd, Ph.D., the State agency psychological consultant, at the reconsideration level of review, both opined at their respective levels of review that the claimant has severe mental health MDI of anxiety, trauma and stressor related disorders, and ADHD. In terms of the "B criteria" both consultants' opined the claimant has moderate limitations in all four functional areas. As for workplace limitations, the consultants' opined the claimant was limited to understanding and remembering simple instruction; limited

> to performing simple, routine tasks; limited to brief and superficial contact with co-workers and supervisors, no contact with the public; and would be limited to adapting to routine changes in a workplace setting, but could perform no fast-paced tasks with strict production quotas; however, variable paced tasks with end of day production quotas would be acceptable.

(*Id*. at 22.)

The ALJ then determined that the reviewers' findings were only "somewhat persuasive," writing as follows:

> The psychological consultants supported their opinions with the mental health evidence available at the time of their review. However, the undersigned finds their opinions only somewhat persuasive. For example, the undersigned notes that they found severe mental health MDI and assessed moderate limitations in all four "B criteria" functional areas, which is consistent with the evidence that is, as discussed, contradictory in some ways and somewhat scattered. The undersigned does not find the psychological consultants' opinions fully persuasive however, because several terms used in their narrative discussion are not vocationally defined, such as "brief" and "superficial."

(*Id*.)

As this discussion demonstrates, the ALJ accepted the reviewers' findings of moderate limitations but not their specific functional restrictions. (*Id*.) Specifically, the ALJ explained that he discredited the reviewers' functional limits because the terms "brief" and "superficial" purportedly lacked a vocational definition. (*Id*.) Plaintiff challenges that reason for discounting the reviewers' social interaction findings. (Pl.'s Statement of Errors 6–9, ECF No. 10.) The undersigned agrees that the ALJ's explanation was inadequate.

### 1. The Superficial-Contact Limit

Although the ALJ stated that "superficial" lacks a vocational definition, the Sixth Circuit Court of Appeals has acknowledged that a superficial interaction limit is a well understood work limitation. *See Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at 4 (6th Cir. June 20, 2023) (quoting *Miles v. Comm'r of Soc. Sec. Admin.,* No. 3:20-cv-410, 2021 WL

4905438, at 5 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J.) ("We find nothing wrong in the ALJ's use of the term 'superficial,' a 'well-recognized work-related limitation,' in the interrogatories to the vocational expert."), *report and recommendation adopted*, 2021 WL 5235326 (S.D. Ohio Nov. 10, 2021) (Rice, J.)).

Many District Courts sitting in the Sixth Circuit have also held that a limit to superficial interactions is understood as a limit regarding the quality of a plaintiff's workplace interactions. *See, e.g.*, *Deana L. F. v. Comm'r of Soc. Sec.*, No. 2:25-CV-1121, 2026 WL 1587259, at *2 (S.D. Ohio June 3, 2026) (Watson, J.) ("The Undersigned agrees with those judges who have concluded that, at least with respect to the term 'superficial,' it is capable of being understood and translated into vocational limitations."); *Spinner v. Comm'r of Soc. Sec.*, No. 2:20-CV-4676, 2021 WL 7908552, at *2 (S.D. Ohio Nov. 29, 2021) (Watson, J.) (explaining that a "'superficial' interaction is a well-defined limitation in the Social Security context"); *Hummel v. Comm'r of Soc. Sec.*, No. 2:18-CV-00028, 2020 WL 13572215, at *4 (S.D. Ohio Mar. 13, 2020) (Graham, J.) ("Stated simply, 'superficial interaction' is a well-recognized, work-related limitation."); *Dawn V. v. Comm'r of Soc Sec.*, No. 1:25-CV-00570, 2026 WL 2874064, at *5 (S.D. Ohio Sept. 24, 2026) (Gentry, M.J.) ("[T]his Court has repeatedly held that superficial interaction is a well-recognized, work-related limitation.'") (internal quotations omitted); *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020) (Vacura, M.J.) (explaining that "'superficial interaction' is a well-recognized, work-related limitation"), *report and recommendation adopted sub nom.*, *Hutton v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (Morrison, J.); *Neal B. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-75, 2024 WL 963713, at *5 (S.D. Ohio Mar. 5, 2024) (Silvain, M.J.) ("Contrary to the ALJ's initial conclusion, 'superficial' contact is a well-recognized work-related limitation.");

*William H. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00219, 2022 WL 4591304, at *4 (S.D. Ohio Sept. 30, 2022) (Gentry, M.J.) (same); *Kenneth A. v. Comm'r of Soc. Sec.*, No. 3:22-CV-110, 2022 WL 17484356, at *5 (S.D. Ohio Dec. 7, 2022) (Vascura, M.J.) (same); *Markcus C. v. Comm'r of Soc. Sec.*, No. 2:22-CV-1917, 2023 WL 1775612, at *5 (Litkovitz, M.J.) (S.D. Ohio Feb. 6, 2023) (same), *report and recommendation adopted*, 2023 WL 2162261 (S.D. Ohio Feb. 22, 2023) (Morrison, J.).

As a result, some District Courts have found reversible error when an ALJ discounts an opined superficial interaction limit only because it is purportedly vague or "not vocationally relevant." *See, e.g.*, *Swank v. Comm'r of Soc. Sec.*, No. 2:20-CV-2396, 2021 WL 1345420, at *4–5 (S.D. Ohio Apr. 12, 2021) (Deavers, M.J.), *report and recommendation adopted*, 2021 WL 1909701 (S.D. Ohio May 12, 2021) (Graham, J.). Likewise, District Courts have found reversible error where an ALJ credits a medical opinion or prior administrative finding that includes a superficial interaction limit but then omits that limit or substitutes another limit for it without adequately explaining why. *See, e.g.*, *Sue A. M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-171, 2022 WL 14346260, at *3–4 (S.D. Ohio Oct. 25, 2022) (Vascura, M.J.), *report and recommendation adopted sub nom., Sue A. M. v. Comm'r of the Soc. Sec. Admin.*, 2022 WL 17414973 (S.D. Ohio Dec. 5, 2022) (Newman, J.); *Garvin v. Comm'r of Soc. Sec.,* No. 2:20-CV-2566, 2021 WL 2200423, at *5 (S.D. Ohio June 1, 2021) (Deavers, M.J.), *report and recommendation adopted,* 2021 WL 2533191 (S.D. Ohio June 21, 2021) (Sargus, J.).

These principles do not, however, establish reversible error in all cases. For instance, there is no reversible error when an ALJ discredits a superficial interaction for legitimate record-based reasons in addition to its purported vagueness. *See, e.g., Deana L. F.*, 2026 WL 1587259, at *3 (Watson, J.) (finding no reversible error where ALJ discounted a superficial interaction

limit because it was not vocationally defined; ALJ also discounted it because the record evidence showed a "greater capacity for interaction" and substantial evidence supported that alternative determination); *Crystal Ann B. v. Comm'r of Soc. Sec.*, No. 2:25-CV-322, 2025 WL 2611969, at *6 (S.D. Ohio Sept. 10, 2025) (Vascura, M.J.) (finding no reversible error where ALJ discounted a superficial interaction limit for vagueness; ALJ also discounted it because it was inconsistent with treatment records describing plaintiff as pleasant and cooperative).

Similarly, there is no reversible error when an ALJ discounts a superficial limit because it is purportedly vague but nevertheless includes limits in an RFC that adequately captures the qualitative nature of a superficial interaction. *See, e.g.*, *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020) (Deavers, M.J.) (finding no reversible error where ALJ declined to incorporate an opined superficial interaction because it was "not vocationally relevant;" ALJ included a "no tandem task" limit that adequately addressed it), *report and recommendation adopted*, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (Graham, J.). *See also Aalijah v. Comm'r of Soc. Sec.*, No. 2:23-CV-1955, 2024 WL 2315290, at *2 (S.D. Ohio May 22, 2024) (Watson, J.) (finding that a limit to no tandem or team tasks adequately accommodated a superficial interaction limit).

Finally, the Sixth Circuit has clarified that because superficial is not defined by regulation or agency guidelines, when an opining source does not define a superficial interaction limit, an ALJ may define that limit provided the ALJ's definition reasonably captures the qualitative nature of the restriction. *Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 WL 1604376, at *5 (6th Cir. June 6, 2025) (finding ALJ did not err where he "delineated specific social restrictions based on his understanding of what a 'superficial' contact limitation require[d] in this context").

Given these principles, the undersigned concludes that the ALJ did not reversibly err with regard to the reviewers' superficial-contact limit. The reviewers found that Plaintiff was "limited to brief and superficial contact with co-workers and supervisors . . . . " (R. at 93, 105, 118, 129.) The ALJ discounted those findings solely because the terms "brief" and "superficial" purportedly lacked vocational definitions. (*Id*. at 22.) That explanation was inadequate. *See Deana L. F.*, 2026 WL 1587259, at *2; *Swank*, 2021 WL 1345420, at *4–5; *Dawn V.*, 2026 WL 2874064, at *6. Nevertheless, the ALJ included a no-tandem-task limit in Plaintiff's RFC, as well as a limit to avoiding public interactions. (R. at 17.) These limits adequately account for the reviewers' superficial-contact limit. *Dickinson,* 2020 WL 4333296, at *11; *Aalijah*, 2024 WL 2315290, at *2.

**2. The Brief-Contact Limit**

The undersigned reaches a different conclusion, however, about the ALJ's evaluation of the reviewers' brief-contact limit. As noted, the reviewers limited Plaintiff to "brief *and* superficial contact with co-workers and supervisors." (R. at 93, 105, 118, 129) (emphasis added).) "Although there is no strict 'rule against redundancy' in the Social Security context, the most sensible reading of this finding is that the reviewers, who are agency experts, intended to describe two different aspects of communication (*i.e*., quality and length) as opposed to describing the same limit twice." *James M. G. v. Comm'r of Soc. Sec.*, No. 2:25-CV-300, 2025 WL 2502321, at *4 (S.D. Ohio Sept. 2, 2025) (Vascura, M.J.). "Stated differently, if superficial and brief are coterminous, the reviewers would not have elected to list them both." *Id*. *See also Elaine K. v. O'Malley*, No. 2:23-CV-1825, 2024 WL 4023217, at *4 (S.D. Ohio Sept. 3, 2024) (Graham, J.) (finding the distinction between occasional, brief, and superficial interaction limits

meaningful because they implicate distinct aspects of interactions: frequency, duration, and quality).

Although "brief" is not defined in the Dictionary of Occupational Titles ("DOT") or the Selected Characteristics of Occupations ("SCO"), it is generally understood by its common meaning—short in duration. *Kalen P. v. Comm'r of Soc. Sec.*, No. 3:24-CV-284, 2025 WL 1096454, at *4 (S.D. Ohio Apr. 14, 2025) (Vascura, M.J.) (citing *Obrien v. Colvin*, No. 1:15-cv-536, 2016 WL 2755459, at *6–7 (M.D.N.C. May 11, 2016) (finding that terms like "contact," "brief," and "superficial" are sufficiently precise based on everyday usage)). This Court has also recognized that "brief" refers to the length of an interaction. *Elaine K.*, 2024 WL 4023217, at *4 (quoting *Oxford English Dictionary* (Dec. 2023) (defining "brief" as "quickly passing away or ending")).

The ALJ did not include in Plaintiff's RFC a brief-contact limit, and the no-tandem-task limit included in his RFC did not otherwise account for that omission. A no-tandem-task restriction limits collaborative contact. It does not address contact duration. An employee might, for example, independently mow assigned grounds, be the sole operator of a machine, or clean rooms by themselves but still be required to participate in lengthy safety discussions or meetings. Such work may involve no tandem tasks while nevertheless requiring interactions that exceed a brief contact limit. Thus, even though the ALJ's no-tandem-task limit accounted for the reviewers' qualitative limit, it did not adequately account for the separate duration component of their findings.

Nor did the frequent-contact limit included in Plaintiff's RFC account for the reviewers' brief-contact limit. Plaintiff expressly raises this issue, and the Commissioner does not dispute

it.[4] (Pl.'s Statement of Errors 8, ECF No. 10.) In any event, the undersigned agrees that frequent and brief interaction limits are distinct. Frequency concerns how often interactions occur; brevity concerns how long they last. *See Elaine K.*, 2024 WL 4023217, at *4. An employee capable of frequent but brief interactions might be able to attend short meetings multiple times a day, but not the same number of prolonged ones. The frequent-contact limit, therefore, does not, by itself, account for the reviewers' brief-contact limit.[5]

The ALJ also failed to adequately explain why the reviewers' brief-contact limit was deficient. The ALJ stated that the term "brief" was "not vocationally defined." (*Id*. at 22.) But the lack of a formal vocational definition does not deprive the term of any ascertainable meaning. As explained, this Court has determined that "brief" can be readily understood in the Social Security context. *Elaine K.*, 2024 WL 4023217, at *4*; James M. G.*, 2025 WL 2502321, at 4; *Kalen P.*, 2025 WL 1096454, at *4. A definition or standard established by judicial precedent is no less authoritative simply because it appears in a judicial opinion rather than a regulation. Indeed, Courts have long supplied authoritative standards in Social Security adjudication. The treating-

---

[4] The Commissioner's response focuses exclusively on Plaintiff's challenge to the ALJ's evaluation of the term "superficial," and leaves Plaintiff's challenge to the ALJ's evaluation of the term "brief" wholly unanswered. (Def.'s Mem. in Opp'n 3–8, ECF No. 11.) Because the Commissioner's response does not address Plaintiff's distinct challenge concerning "brief" interactions, the Commissioner has forfeited any opposition to that argument. *Cf. KSA Enters., Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 463 (6th Cir. 2019) (holding that failure to respond to an argument raised in a motion to dismiss results in forfeiture); *see also Hunt v. Colvin*, 954 F. Supp. 2d 1181, 1196 (W.D. Wash. 2013) (construing the Commissioner's failure to respond as a concession and declining to "manufacture a defense on the Commissioner's behalf where Plaintiff has identified an at least plausible error").

[5] Moreover, it does not appear that the ALJ intended the frequent-contact limit to accommodate the reviewers' brief-interaction restriction. Rather, the ALJ appears to have adopted the frequent-contact limit from another medical expert's opinion that the ALJ found persuasive because it was consistent with Plaintiff's reports to the consultative examiner. (R. at 24.) Plaintiff does not challenge the ALJ's evaluation of the other medical opinion.

physician rule, for example, originated in judicial decisions before the Commissioner adopted regulations formalizing it. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003).

The absence of a formal vocational definition therefore does not, standing alone, adequately explain the ALJ's rejection of the reviewers' limit on brief contact. If an ALJ finds a term insufficiently precise, he or she can explain its meaning and translate it into concrete vocational restrictions. *See, e.g.*, *Mabry-Schlicher*, 2025 WL 1604376, at *5 (finding no error where an ALJ translated the agency experts' superficial-contact limit into specific social restrictions that captured their qualitative essence). But the discretion to translate a limitation is not a license to discard its substance. Characterizing a medical source's term as "nonstandard" does not substitute for evaluating the supportability, consistency, and functional significance of the limit that the term describes. Otherwise, an ALJ could sidestep a medical expert's assessment by simply objecting to the expert's word choice. That approach elevates a source's vocabulary over the substance of an assessed restriction.

To be clear, the undersigned does not suggest that the ALJ was required to adopt the reviewers' brief-contact limit. The ALJ was, however, required to explain the conflict between that limit and the ultimate RFC determination. SSR 96-8p expressly provides: "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996). Such a conflict exists when a source identifies a particular functional limitation, but the RFC neither includes that limitation nor otherwise accounts for it. In that circumstance, the discrepancy is substantive: the opinion includes a limit on a claimant's ability to perform a work-related activity, while the RFC does not. *See*, *e.g.*, *Allyson F. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-3166, 2024 WL

4035015, at *3 (S.D. Ohio Sept. 4, 2024) (Marbley, J.) (explaining that "the inconsistency" requiring explanation "is between a credited medical source's opinion to limit a claimant to superficial interactions and the absence of any RFC limitations to that effect"). That is the discrepancy requiring explanation here.

The ALJ's explanation that "brief" is not vocationally defined did not describe whether the reviewers' brief-contact limit was supported by or consistent with the record evidence. Without an adequate explanation, the Court cannot meaningfully review whether substantial evidence supports the decision to omit that limit from Plaintiff's RFC. And because neither the no-tandem-task limit nor the frequent-contact limit restricted the duration of Plaintiff's interactions, the RFC did not otherwise account for the brief-contact limit. On this record, the undersigned cannot conclude that the inadequately explained omission of the reviewers' brief-contact limit was harmless.

## V. RECOMMENDED DISPOSITION

Accordingly, the undersigned concludes that the ALJ reversibly erred by rejecting the reviewers' brief-interaction limit solely because that term purportedly lacked a vocational definition, and without otherwise accommodating that limit. It is, therefore, **RECOMMENDED** that the Court **OVERRULE** the Commissioner's non-disability determination and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

*/s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE